[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the motion for class certification of Sandra Mendoza (Mendoza) and Charles E. Williams (Williams) (collectively, Plaintiffs) and the motion to dismiss or, alternatively, for summary judgment of Midland Hyundai, Inc. (Defendant).
 FACTS/TRAVEL
I. The Alleged Violation
Defendant is a Rhode Island corporation that distributes new and used motor vehicles. On February 6, 2001, Defendant sold Mendoza a used Ford Taurus sedan. In connection with the sale, Defendant charged Mendoza a $120 "Doc Fee." Likewise, on February 17, 2001, Defendant sold Williams a used Mazda B2500 pickup truck, charging Williams a $120 "Doc Fee" in connection with the sale.
On July 19, 2002, Plaintiffs filed this suit, alleging that Defendant's fee-charging practice violates Section VI(m) of the Rhode Island Department of Transportation (DOT) "Rules and Regulations Regarding Dealers, Manufacturers and Rental Licenses" (DOT Regulations). Section VI(m) states:
 "(m) `PREPARATION FEE' or `DOCUMENTARY FEE': A motor vehicle dealer licensed by the Department may, in connection with the sale of a motor vehicle, impose a fee for the service of registering and titling said vehicle with the Division of Motor Vehicles. Said fee shall be separately itemized on the bill of sale, and designed `Title Preparation Fee' and shall not exceed twenty dollars ($20.00).
 A motor vehicle dealer who, in connection with the sale of a motor vehicle, imposes a `Title Preparation Fee' shall provide to the purchaser a written statement which fully discloses the services to be rendered pursuant to the payment of the `Title Preparation Fee.' Said services shall include:
 (1) preparation of the title application;
 (2) preparation of the sales tax forms;
 (3) preparation of any other forms required to title the vehicle, and
 (4) registering and titling of the vehicle at the Division of Motor Vehicles.
 No dealer shall impose any other fees of similar meaning and/or for related services, such as, but not limited to: freight, handling, overhead expenses, vehicle preparation, etc., in an attempt to circumvent this rule."
Plaintiffs assert that they can bring this suit pursuant to G.L. 1956 § 31-5.1-13. That section, entitled "Civil Remedies," provides in pertinent part:
 "(a) Notwithstanding the terms, provisions, or conditions of any agreement or franchise or the terms or provisions of any waiver, any consumer who is injured by a violation of this chapter, or any party to a franchise who is so injured in his or her business or property by a violation of this chapter relating to that franchise, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this chapter, may bring a civil action in the superior court to enjoin further violations, and to recover the actual damages sustained by that person together with the costs of the suit, including a reasonable attorney's fee." Section 31-5.1-13.
Plaintiffs seek actual damages; attorneys fees, litigation expenses, and costs; declaratory relief as to the validity of the DOT Regulations; and injunctive relief enjoining Defendant from charging the allegedly unauthorized fees. Furthermore, Plaintiffs move to certify a class of individuals who purchased a vehicle from Defendant on or after a date four years prior to the filing of this action[1] and from whom Defendant charged a "doc fee" or similar charge in violation of Section VI(m).
II. History of the DOT Regulations
On or about January 17, 1992, DOT adopted the DOT Regulations,[2] including Section VI(m), pursuant to G.L. 1956 §§ 31-5, 31-5.1, 42-35-3(b) and 42-35-4(b)(2).[3] DOT Reg. § 1. On January 23, 1992, DOT filed the DOT Regulations with the Rhode Island Secretary of State.[4]
In 1993, P.L. 1993, Ch. 139 amended § 31-5 to include G.L. §31-5-2.1. Section 31-5-2.1 provides for a "motor vehicle dealers license and hearing board" that "shall have supervision over the license with respect to all of the provisions of §§ 31-5-1 —31-5-39, inclusive, and shall have the power to promulgate rules and regulations to fulfill the purposes of this chapter and to protect the public interest."
Furthermore, in 1994, P.L. 1994, Ch. 70, Art. 21 amended G.L. §§ 31-5-1 and 31-5-2 as follows:
 "31-5-1. Definition of terms. — Whenever the words "licensor", and/or departments are used in chapters 31-5-1 to 31-5-20, inclusive, chapter 31-5 and 31-5.1, inclusive, they shall mean the `department of transportation administration.'"
 "31-5-2. Duties of department of transportation. Duties of department of administration. —
 . . . The department of transportation administration shall have supervision over the licenses in respect to all the provisions of sections 31-5-1 to 31-5-20, inclusive, sections 31-5-33 to 31-5-39, inclusive, and shall have power to make and to issue rules and regulations to fulfill the purposes of said chapters and to protect public interest."
P.L. 1994, Ch. 70, Art. 21 also amended G.L. § 31-5.1-3, substituting the Department of Administration (DOA) for DOT. As amended, § 31-5.1-3 reads as follows:
 "(a) Unfair methods of competition, and unfair or deceptive acts or practices, as defined in this chapter, are declared to be unlawful.
 . . .
 (c) The department of administration may make rules and regulations interpreting the provisions of subsection (a) of this section. . . ."[5]
On January 7, 2002, the DOT Regulations were refiled pursuant to G.L. § 42-35-4.1.[6] No record exists that DOT filed an extension of the DOT Regulations or a permanent set of regulations in accordance with the requirements of G.L. § 42-35 (Vogel Aff. ¶ 3-4), or that DOA adopted any regulations. (See
LaTerra Bellina Aff. ¶ 3.)
 STANDARD OF REVIEW
The office of a motion to dismiss is to examine the sufficiency of the complaint. Laurence v. Sollitto, 788 A.2d 455, 456 (R.I. 2002). When ruling on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, "the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a plaintiff's favor." Id. The court should grant such a motion "only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena v.Microsoft Corp., 796 A.2d 461, 463 (R.I. 2002).
A judge need not reject affidavits or other evidence presented in support of a motion to dismiss. Laurence, 788 A.2d at 457. Rather, when
 "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Super. R. Civ. P. 12(b).
"A dismissal motion that relies on evidence outside of the pleadings, however, must be treated as a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure." Strynar v. Rahill, 793 A.2d 206, 209 (R.I. 2002).
In a summary judgment proceeding, the moving party must demonstrate that he or she is entitled to judgment as a matter of law and that no genuine issues of material fact exist.Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317, 320 (R.I. 1992); Super. R. Civ. P. Rule 56(c). During such a proceeding, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320. Moreover, "the trial justice must look for factual issues, not determine them" as the judge's sole function is to determine whether any issues involving material fact exist. Steinberg v. State,427 A.2d 338, 340 (R.I. 1981).
"When an examination of pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in a light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." IndustrialNat'l Bank v. Peloso, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (R.I. 1979). In opposing the summary judgment motion, the nonmoving party will not be allowed to rely upon mere allegations or denials in his or her pleadings. Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998); Super. R. Civ. P. 56(e). Instead, by affidavits or otherwise, the nonmoving party possesses an affirmative duty to set forth specific facts demonstrating the existence of a genuine issue of material fact. Id. It is not, however, an absolute requirement that the nonmoving party file an affidavit in opposition to the motion. Steinberg, 427 A.2d at 340. Rather, if the moving party's affidavit does not establish the absence of a material factual issue, the trial justice should deny the motion despite the nonmoving party's failure to file a counter-affidavit. Id.
 PLAINTIFFS' REQUEST FOR A DECLARATORY JUDGMENT
Plaintiffs move this Court to issue a declaratory ruling concerning the validity of the DOT Regulations. Pls.' Post Hr'gMem. at 3; Complaint at 1. Under the Uniform Declaratory Judgment Act, this Court possesses "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. 1956 § 9-30-1. This Court may also grant further affirmative relief based on a declaratory judgment "whenever necessary or proper" provided subsequent "supplementary proceedings" are brought pursuant thereto. G.L. §§ 9-30-8 and9-30-12. More specifically, G.L. § 42-35-7 states that:
 "[t]he validity or applicability of any rule may be determined in an action for declaratory judgment in the [S]uperior [C]ourt of Providence County, when it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff."
The party seeking declaratory relief must present the court with an actual controversy. Millett v. Hoisting Eng'rs' LicensingDiv. of Dep't of Labor, 119 R.I. 285, 291, 377 A.2d 229, 233 (R.I. 1977). Therefore, "to warrant a determination by the trial justice of the validity of . . . questioned rules," the moving party "must demonstrate a sufficient allegation of interest."Id. at 292, 377 A.2d at 234. In other words, the moving party must establish "appropriate facts . . . from which the trial justice may determine that an actual controversy relating to the validity of the agency's rules exists." Id.
"The purpose of declaratory judgment actions is to render disputes concerning the legal rights and duties of parties justiciable without proof of a wrong committed by one party against another, and thus facilitate the termination of controversies." Id. at 291, 377 A.2d at 233. "The decision to grant or to deny declaratory relief under the Uniform Declaratory Judgment Act is purely discretionary." Sullivan v. Chaffee,703 A.2d 748, 751 (R.I. 1997). However, "[i]n light of their highly remedial nature . . . declaratory judgment statutes should be liberally construed; they should not be interpreted in a narrow or technical sense." Millett, 119 R.I. at 291, 377 A.2d at 233.
In the exercise of its discretion, this Court finds that a declaratory judgment as to the validity of the DOT Regulations is proper. Appropriate facts have been adduced placing the validity of the DOT Regulations in controversy. In light of the case law mandating that the Court construe declaratory judgment statutes liberally and not in a narrow or technical sense, this Court finds that Plaintiffs' and Defendant's contentions concerning the DOT Regulations suffice to bring Plaintiffs' request for declaratory relief into the ambit of § 42-35-7.
 DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Finding that Defendant's motion relies on evidence outside of the pleadings, this Court will treat Defendant's motion as a motion for summary judgment.
I. The DOT Regulations as Emergency Rules
In support of its motion, Defendant argues that DOT promulgated the DOT Regulations as emergency rules, which expired 120 days after their submission to the Secretary of State. Since DOT submitted the DOT Regulations to the Secretary of State on January 23, 1992, they expired, Defendant claims, on May 23, 1992. Therefore, the DOT Regulations, particularly Section VI(m), were invalid at the time of Plaintiffs' purchases and during the period for which Plaintiffs seek to certify a class.
Plaintiffs, on the other hand, claim that DOT did not file the DOT Regulations as emergency rules. In support of this contention, Plaintiffs rely on the cover sheet for the DOT Regulations that designates the type of filing as "Pursuant to Chapter 42-35" rather than "Emergency" and the "types of rules and regulations" and "documents filed" as "New Rules and Regulations." In addition, Plaintiffs direct this Court's attention to the January 7, 2002 "Rules and Regulations Filing Form" that lists the type of filing as "Refile 42-35-4.1" and the dates of "Public Notice" and "Public Hearing" as "00/00/0000."
In general, to adopt rules, an agency must comply with the requirements set forth in § 42-35-3(a). These requirements include 30-days' notice of the agency's intended action and a reasonable opportunity for interested persons to submit data, views, or arguments. Section 42-35-3(a)(1)-(2).
Section 42-35-3(b), dealing with the adoption of an emergency rule, provides an exception to the adoption requirements of §42-35-3(a). It states:
 "If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon less than thirty (30) days' notice, and states in writing its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt an emergency rule. The rule so adopted may be effective for a period of not longer than one hundred twenty (120) days renewable once for a period not exceeding ninety (90) days, but the adoption of an identical rule under subsections (a)(1) and (a)(2) is not precluded." Section 42-35-3(b).
Furthermore, § 42-35-4(b)(2), concerning the filing and taking effect of an emergency rule, provides that:
 "(b) Each rule hereafter adopted is effective twenty (20) days after filing with the secretary of state, except that:
 . . .
 (2) Subject to applicable constitutional or statutory provisions, an emergency rule may become effective immediately upon filing with the secretary of state, or at a stated date less than twenty (20) days thereafter, if the agency finds that this effective date is necessary because of imminent perils to the public health, safety, or welfare. The agency's finding and a brief statement of the reasons therefor shall be filed with the rule in the office of the secretary of state. The agency shall take appropriate measures to make emergency rules known to the persons who may be affected by them."
Where an agency filed emergency regulations and, more than 120 days after the filing, adopted permanent regulations, an order issued by the agency after the emergency regulations expired, but before the permanent regulations took effect, was invalid.Providence Gas Co. v. Pub. Utilities Comm'n, 116 R.I. 225, 227-28, 354 A.2d 413, 414-15 (1976). The agency's order, in other words, "was not made pursuant to any regulation that might have been in force on that date." Id. at 415.
For several reasons, this Court finds that DOT promulgated the DOT Regulations, including Section VI(m), as emergency rules. First, the cover letter accompanying the DOT Regulations, seesupra note 2, states as follows: "The Department of Transportation finds that there is imminent peril to the public health, safety and welfare in that it is the duty of the Department to license, regulate and enforce all of the Sections of Chapter 31-5, 31-5.1." This language mirrors the wording of §42-35-3(b), dealing with the procedure for the adoption of an emergency rule. See § 42-35-3(b) (stating "[i]f an agency finds that an imminent peril to the public health, safety, or welfare
requires adoption of a rule upon less than thirty (30) days' notice . . .") (emphasis added).
Second, the cover letter specifies the reasons for DOT's finding of "imminent peril," stating:
 "The consuming public would be without a forum to redress infractions of the above-cited Chapter and their respective selections. The industry would be unregulated and the Department would be powerless to combat unfair business practices that occur daily in the sale, manufacture and distribution of new and used automobiles. The provision of 31-5.1-4(B)(2) cites the concerns of consumer care and public welfare."
This statement of reasons complies with § 42-35-3(b)'s requirement that the agency articulate the reasons for its finding of imminent peril. See § 42-35-3(b) (stating that "[i]f an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon less than thirty (30) days' notice, and states in writing its reasons forthat finding, it may . . . adopt an emergency rule"). Seealso § 42-35-4(b)(2) (stating that "[t]he agency's finding anda brief statement of the reasons therefor shall be filed with the rule in the office of the secretary of state") (emphasis added).
Third, the cover letter states that "[i]n accordance with Rhode Island General Laws Sections 42-15-3(b) and 42-35-4(b)(2), the above rule[s] shall take effect upon filing." This sentence evidences DOT's emergency adoption of the DOT Regulations because § 42-35-4(b)(2) concerns emergency rules, and emergency rules become effective, as the rules mentioned in the letter, upon filing.[7]
This Court does not find Plaintiffs' argument concerning the cover sheet for the DOT Regulations persuasive. While notice constitutes a requirement for non-emergency adoption, the cover sheet fails to list a "date of public notice." Furthermore, the designation of the filing as "Pursuant to Chapter 42-35" does not preclude an emergency adoption as § 42-35 encompasses emergency regulation provisions. Finally, the categorization of the "type of rules and regulations" and "documents filed" as "new rules and regulations" does not obviate an emergency adoption because rules can be new as well as adopted pursuant to emergency procedures.
Likewise, this Court finds the January 7, 2002 "Rules and Regulations Filing Form" that lists the type of filing as "Refile42-35-4.1" and the dates of "Public Notice" and "Public Hearing" as "00/00/0000" unpersuasive as no valid refiling occurred. While § 42-35-4.1(c) requires thirty days' notice of a refiling, seesupra note 6, the filing form lists no date of "Public Notice." In addition, pursuant to § 42-35-4.1(g)(1), the DOT Regulations did not "remain in full force and effect" because they "expire[d] before July 3, 2001 pursuant to . . . [their] own terms and provisions"; that is, as emergency rules, the DOT Regulations expired on May 22, 1992.[8]
In conclusion, this Court finds that DOT adopted the DOT Regulations as emergency rules, which expired within 120 days of their submission to the Secretary of State. The DOT Regulations, therefore, were invalid at the time of the alleged violation and during the time period for which Plaintiffs seek class certification. Accordingly, this Court grants Defendant's motion for summary judgment.[9]
 PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
As this Court granted Defendant's motion for summary judgment, it need not decide Plaintiffs' motion for class certification.
 CONCLUSION
Finding that DOT adopted the DOT Regulations as emergency regulations, this Court grants Defendant's motion for summary judgment. Defendant shall present an appropriate order and judgment for entry.
[1] Such a class would include individuals who purchased a vehicle from Defendant on or after July 19, 1998 until July 19, 2002.
[2] DOT Director Daniel P. Fanning signed the DOT Regulations on January 17, 1992. However, a cover letter dated January 15, 1992 from J. Ryder Kenney (Kenney), legal counsel to DOT, to Kathleen S. Connell, the Secretary of State, accompanied the DOT Regulations.
[3] Sections 31-5 and 31-5.1 are entitled "Dealers,' Manufacturers,' and Rental Licenses," and "Regulation of Business Practices Among Motor Vehicle Manufacturers, Distributors, and Dealers," respectively. Section 42-35-3(b) concerns the adoption of an emergency rule and § 42-35-4(b)(2) relates to the filing and taking effect of an emergency rule.
[4] The DOT Regulations are stamped as received by the Secretary of State on January 23, 1992.
[5] P.L. 1994, Ch. 70, Art. 21, which provides for this change, took effect on July 1, 1994.
[6] Section 42-35-4.1 states, in pertinent part:
 "(a) Each agency shall, on or before January 2, 2002, according to a schedule specified by the secretary of state, file with the secretary of state a certified copy of all its lawfully adopted rules which are in force on the date of the filing.
 (b) All filed rules shall be submitted in a format specified by the secretary of state as directed by § 42-35-3.1.
 (c) Each agency shall give notice thirty (30) days prior to refiling any rule or regulation in order to comply with this section. Each agency shall also give notice thirty (30) days prior to that agency's due date for refiling of which rules and regulations it shall not be refiling. The notices shall include a statement of the intended action and a description of the subjects and issues involved. The notice shall be mailed to all persons who have made timely request of the agency for advance notice of its rule-making proceedings, and published in a newspaper or newspapers having aggregate general circulation throughout the state. Copies of rules which are not to be refiled shall be available at the agency and by mail to any member of the public upon request. In addition, notice of that action shall be submitted to the governor.
 (d) The rules and regulations listed for non-refiling under subsection (c) of this section shall be repealed pursuant to this section only in accordance with the provisions of § 42-35-3(a).
 (e) Agency compliance with this section shall be coordinated in accordance with a schedule established by the secretary of state for agency refiling of rules.
 (f) When refiling rules and regulations, agencies may change the format of existing rules without any rule-making action by the agency in order to comply with the format for filing specified by the secretary of state so long as there is no substantive change to the rule.
 (g) Any rule lawfully promulgated prior to July 3, 2001 shall remain in full force and effect until:
 (1) The rule should expire before July 3, 2001 pursuant to its own terms and provisions; or
 (2) The rule is repealed by the lawful act of the agency, in conformity with this chapter; or
 (3) The rule is invalidated by an act of the legislature or the force and effect of another law.
 (h) Commencing in September 2002, and every five (5) years in September thereafter, the secretary of state shall prepare a public list of all adopted rules and regulations which have not been refiled or repealed in accordance with this section or § 42-35-4.2. The secretary of state shall forward copies of the list to the various state departments and agencies responsible for the rules and regulations. Each agency or department shall review the list and repeal, in accordance with § 42-35-3(a), all rules and regulations that are no longer operative. If the agency takes no action on a rule contained in the secretary of state's list, the rule shall remain lawfully promulgated."
[7] Rhode Island General Laws § 42-15-3(b), cited in the cover letter, deals with the Department of Education and is obsolete. Section 42-35-3(b), however, a relevant provision whose citation differs from 42-15-3(b) by only one digit, delineates the procedure for adopting an emergency rule.
[8] The January 7, 2002 refiling is also invalid under §42-35-4.1's filing provisions. Section 42-35-4.1(a) requires that each agency file its rules "on or before January 2, 2002." The DOT Regulations, however, were refiled on January 7, 2002. Furthermore, § 42-35-4.1(a) mandates that the rules be "in force on the date of the filing." The DOT Regulations were not "in force" on January 7, 2002 as they expired on May 22, 1992.
[9] Having determined that the DOT Regulations constituted emergency rules, this Court need not address Defendant's additional arguments concerning the 1993 and 1994 amendments; whether Plaintiffs possess a private right of action under §31-5.1-13; whether Plaintiffs are entitled to injunctive relief and actual damages; Section VI(m)'s constitutionality; exhaustion of administrative remedies; whether Plaintiffs satisfy the $5000 subject matter jurisdictional prerequisite; whether the civil remedies of § 31-5.1-13 apply to the DOT Regulations.