354 A.2d 413.

PROVIDENCE GAS COMPANY *vs.* PUBLIC UTILITIES COMMISSION *et al.*

MARCH 31, 1976.

PRESENT: Paolino, Acting C. J., Joslin and Kelleher, JJ.

KELLEHER, J. This case arises out of a statutory petition for certiorari filed with us pursuant to G. L. 1956 (1969 Reenactment) §39-5-1. The issues raised concern the validity of rules and regulations which delineate when and under what conditions the petitioner can refuse to provide natural gas to customers whose accounts are delinquent. The respondents are the Public Utilities Commission, the Administrator of Public Utilities, and Cecile Lariviere, a customer of the petitioner. Hereinafter we shall refer to the Public Utilities Commission as the commission, the Administrator of Public Utilities as the administrator, Providence Gas Company as Providence, and the customer as Cecile.

In January 1975 Cecile and her six children lived in West Warwick. The family was receiving public assist-

ance. Near the end of January, Providence notified Cecile that her gas bill of $114.59 was past due and, unless satisfactory arrangements for payment were reached before February 11, the utility would discontinue her gas service. Thereafter, Providence shut off Cecile's gas. Later Cecile made a $10 payment on the arrearage, agreeing to pay another $80 thereon in March. Additionally, she promisd to pay the current bills as they became due and the balance of the arrearage in weekly installments. At that time Cecile's arrearage amounted to $104, and her current gas gill was $80. Cecile's gas service was restored. She made an effort to abide by the agreement but apparently found it impossible to comply with its terms.

Near the end of March, Providence, tired of Cecile's unfulfilled promises, sent her a second notice, telling her that the gas was going to be shut off unless the bill was paid in full immediately. On April 8, Cecile's physician wrote to Providence and told the utility that the six children were being treated for "various infections" and asked the utility to further extend her credit. Sometime thereafter Cecile, through her attorneys, sought the commission's assistance. The efforts of various subordinates of the administrator to work out a credit arrangement with the utility proved unsuccessful. Consequently, on April 25, 1975, an order bearing the signatures of two commission members was issued, commanding the immediate restoration of Cecile's gas service. Within the week Providence filed this petition.

Providence claims that the April 25 order is a nullity for a variety of reasons, including the argument that the commission lacks any authority whatever to issue regulations that would limit the utility's right to terminate service. Quite naturally respondents take a contrary view. For reasons that will soon become apparent, we shall assume

that the termination regulations come within the commission's rule-making power.

The commission issued two sets of rules relating to the turning off and on of gas, electric, and water services. The first set, filed with the Secretary of State's office on December 2, 1974, was characterized by the caption: "Emergency Rules and Regulations." The preface contained certain findings of fact relative to the necessity of such services, their increasing cost to the consumer and a reference to the forecasters' prediction of a severe winter for the 1974-75 season. Additionally, the rules included a stipulation which stated that the 20-day notice period normally required would be waived and the regulations would take effect immediately.

Normally, under §42-35-3(a) an agency such as the commission is not allowed to adopt any rules to assist it in its operations until it has given a 20-day notice to those who have made a timely request for advance notice of its rule-making proceedings and published it in a newspaper or newspapers with a statewide circulation. The commission's authority to waive the 20-day notice is to be found in §42-35-3(b) of the Administrative Procedures Act which empowers an agency to adopt emergency rules without first complying with the notice requirements if it finds the waiver is required because there exists an imminent peril to the public health, safety, or welfare. However, subsection (b) provides that these rules may remain in effect no more than 120 days, unless renewed for an additional 90 days.

On March 26, 1975, more than 3 months later, the commission gave public notice of its intent to adopt on April 24 a permanent set of termination regulations which were ultimately adopted and filed with the Secretary of State in May. The permanent regulations are practically identical to the earlier regulations with one significant excep-

tion. The permanent ones make it clear that they will apply only to the residential customer, while those adopted earlier in December contain no such limitation. However, neither set of regulations can support the April 25 order.

As noted earlier, the emergency regulations were good for a period of only 120 days. The regulations went into effect on December 2, 1974, and expired on March 2, 1975. The permanent regulations could not become effective until 20 days after they were filed with the Secretary of State in May. Section 42-35-4. Therefore, it is obvious that the April 25 order was issued during a hiatus between the end of the emergency regulations and the day on which the permanent rules would take effect.[1]

The respondents recognize the possibility of such a gap but maintain that the commission's order is part of certain powers conferred upon it by §39-1-32. This particular legislation permits this commission to take summary and immediate action if it determines that the "public safety" demands such action or a utility is faced with a sudden unanticipated fiscal crisis or the "public interest" will be "irreparably" harmed if the status quo remains undisturbed.

Assuming that the medical problems which prevailed at Cecile's house come somewhere within the ambit of §39-1-32, the respondents' reliance on this legislation appears to have been an afterthought. This section expressly states that any order issued pursuant to its terms shall be of temporary duration, that is, until such time as the parties

---

[1] A difference of opinion as to the validity of a regulatory agency's ruling governing the discontinuance of a customer's service by a public utility has been expressed by the Supreme Courts of Massachusetts and Vermont. The regulations were upheld in *Cambridge Electric Light Co. v. Dept. of Pub. Util.*, Mass., 295 N.E.2d 876 (1973), and nullified in *Petition of Vermont Welfare Rights Organization*, 132 Vt. 622, 326 A.2d 828 (1974).

have been heard. The commission's order makes no provisions which will insure that the latter requirement will be satisfied. To the contrary, it mandates an immediate turn-on of the gas and makes no mention whatever that its order will be of short duration, nor does it afford the utility with an opportunity to be heard in an expeditious fashion. In summary, then, we must fault the turn-on order of April 25 because, first, it was not made pursuant to any regulation that might have been in force on that date and, secondly, it comes nowhere near complying with the requirements of §39-1-32.

The petition for certiorari is granted, the order issued by the Public Utilities Commission is quashed, and the papers in the case are returned to the commission with our decision endorsed thereon.

Mr. Chief Justice Roberts was present at oral argument but retired prior to consideration or decision of this case.

Mr. Justice Doris did not participate.

*Hinckley, Allen, Salisbury & Parsons, Thomas D. Gidley, Robert J. Ferranty,* Senior Vice-President, Providence Gas Company, for petitioner.

*Julius C. Michaelson,* Attorney General, *R. Daniel Prentis,* Special Asst. Attorney General, for respondents.

*Charles Greenwood, Rhode Island Legal Services, Inc.,* for respondent Cecile Lariviere.