John M. PARK

v.

RIZZO FORD, INC.

Sandra Mendoza et al.

v.

Midland Hyundai, Inc. d/b/a Midland Mazda–Hyundai.

Nos. 2004–264–Appeal, 2004–339–Appeal.

Supreme Court of Rhode Island.

Jan. 24, 2006.

Christopher M. Lefebvre, Pawtucket, for Plaintiff.

Giovanni La Terra Bellina, Providence, for Defendant Rizzo.

Barbara Harris, Providence, for Defendant Midland.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

In these two consolidated civil suits, John M. Park as well as Sandra Mendoza and Charles E. Williams (collectively plaintiffs) appeal two Superior Court judgments in favor of Rizzo Ford, Inc. and Midland Hyundai, Inc. d/b/a Midland Mazda–Hyundai (collectively defendants), respectively. The plaintiffs based their causes of action upon a Department of Transportation regulation (DOT regulation) that placed a $20 limit on all "title preparation fee[s]" charged by licensed motor vehicle dealers. On the defendants' motions, the motion justice, after concluding that the DOT regulation no longer was in force at the time the defendants charged the plaintiffs the relevant fees, dismissed the plaintiffs' suits. Although we are troubled by the ineptitude exhibited by the state agencies in this case, we affirm the judgment of the Superior Court for the reasons set forth in this opinion.

### I

#### Facts and Travel

In 1992, the Rhode Island Department of Transportation (RIDOT) adopted a DOT regulation, which included the following language:

"(m) 'PREPARATION FEE' or 'DOCUMENTARY FEE': A motor vehicle dealer licensed by the Department

may, in connection with the sale of a motor vehicle, impose a fee for the service of registering and titling said vehicle with the Division of Motor Vehicles. Said fee shall be separately itemized on the bill of sale, and designed [sic] 'Title Preparation Fee' and shall not exceed twenty dollars ($20.00).

"A motor vehicle dealer who, in connection with the sale of a motor vehicle, imposes a 'Title Preparation Fee' shall provide to the purchaser a written statement which fully discloses the services to be rendered pursuant to the payment of the 'Title Preparation Fee.' Said services shall include:

"(1) preparation of the title application;

"(2) preparation of the sales tax forms;

"(3) preparation of any other forms required to title the vehicle, and

"(4) registering and titling of the vehicle at the Division of Motor Vehicles.

"No dealer shall impose any other fees of similar meaning and/or for related services, such as, but not limited to: freight, handling, overhead expenses, vehicle preparation, etc., in an attempt to circumvent this rule."

On January 23, 1992, RIDOT filed the DOT regulation with the Secretary of State. Attached was a cover letter, dated January 15, 1992, generally outlining the reasons for the DOT regulation:

"Pursuant to Chapter 31–5, 31–5.1, 42–35–3(b) and 42–35–4(B)(2) of the Rhode Island General Laws as well as any amendments to the above section found in House Bill No. 91H7074 passed by the Legislature in the 1990–91 ses-

sion, the Rhode Island Department of Transportation files Rules and Regulations.

"The Department of Transportation finds that their [sic] is imminent peril to the public health, safety and welfare in that it is the duty of the Department to license, regulate and enforce all of the Sections of Chapter 31–5, 31–5.1.

"The consuming public would be without a forum to redress infractions of the above-cited Chapter and their respective selections [sic]. The industry would be unregulated and the Department would be powerless to combat unfair business practices that occur daily in the sale, manufacture and distribution of new and used automobiles. The provision of 31–5.1–4(B)(2) cites the concerns of consumer care and public welfare.

"With that intent, the Department of Transportation, proposes to rescind the regulations presently in place a [sic] adopt the above-entitled Rules and Regulations."

There is no evidence that the public was notified of, or given opportunity to comment on, the regulation.

Each of the plaintiffs purchased motor vehicles from his or her respective defendants. The plaintiffs alleged that defendants charged them various fees in contravention of the DOT regulation. They sought actual damages, attorneys' fees, and litigation expenses, as well as declaratory[1] and injunctive relief. Finally, plaintiffs moved to certify a class of individuals who were charged any prohibited fees in conjunction with the purchase of a vehicle from defendants within four years of the filing of the action.

1. The plaintiffs' request for a declaratory judgment sought a determination of the validity of the DOT regulation. The motion justice determined, pursuant to G.L.1956 § 42–35–7, that plaintiffs' request was properly before the court. Neither party takes issue with that determination on appeal.

The motion justice, after finding that the DOT regulation was an emergency regulation that had expired 120 days after being enacted, granted defendants' motion to dismiss. The plaintiffs now appeal that judgment.

## II

## Analysis

■ Although defendants originally filed a motion pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, contending that plaintiffs failed to state a claim upon which relief could be granted, the motion justice, citing defendants' reliance on evidence outside the pleadings, properly treated defendants' motion as one for summary judgment. *See* Rule 12(b) (stating that if, on a Rule 12(b)(6) motion, a party presents matters outside the pleadings that are not excluded by the motion justice, then "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56").

■ "This Court reviews the granting of summary judgment *de novo* and applies the same standards as the motion justice." *DeCamp v. Dollar Tree Stores, Inc.* 875 A.2d 13, 20 (R.I.2005).

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super. R. Civ. P. 56(c).

## A

### Emergency Regulation

■ Relying on express language in the cover letter to the DOT regulations, the motion justice concluded that the regulation in question was enacted as an emergency regulation. The plaintiffs argue on appeal that, because the language evidencing that it was an emergency regulation was not contained in the regulation itself, the trial justice committed reversible error.

■ General Laws 1956 § 42–35–3, as amended by P.L. 1995, ch. 300, § 1, provides, in pertinent part:

"(a) Prior to the adoption, amendment, or repeal of any rule the agency shall:

"(1) Give at least thirty (30) days notice of its intended action. The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and of the time when, the place where, and the manner in which interested persons may present their views thereon.

"(2) Afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing.

"(3) Demonstrate the need for the adoption, amendment, or repeal of any rule in the record of the rulemaking proceeding.

" * * *

"(5) Ensure that any proposed additions, deletions or other amendments to the rules and regulations be clearly marked.

"(b) If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon less than thirty (30) days' notice, and states in writing its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt an emergency rule. The rule so adopted may be effective for a period of not longer than one hundred twenty (120) days renewable once for a

period not exceeding ninety (90) days, but the adoption of an identical rule under subsections (a)(1) and (a)(2) is not precluded." [2]

Thus, to be given the force of law, all applicable regulations must be enacted pursuant to either the formal adoption procedure outlined in subsection (a) or the emergency adoption procedure outlined in subsection (b).

As authority for the argument that the regulation in question is not an emergency regulation, plaintiffs cite *Providence Gas Co. v. Public Utilities Commission,* 116 R.I. 225, 227, 354 A.2d 413, 414 (1976), in which we noted that a pertinent regulation clearly was labeled an "emergency" regulation, and that it was accompanied by factual findings supporting the need for an emergency regulation.[3] The holding in *Providence Gas Co.,* however, does not support plaintiffs' argument. That case does not hold that a regulation must be expressly identified as an emergency regulation; it does not hold that the factual findings must be included in the regulation itself; nor does it hold that statements contained in a cover letter are insufficient to support a conclusion that the attached regulation is an emergency regulation. Thus, we reject plaintiffs' argument that language in a cover letter cannot prove that a regulation was enacted as an emergency regulation.

Our *de novo* review of the cover letter and the regulation clearly reveals that the DOT regulation was enacted as an emer-gency regulation. First, the cover letter and the regulation both state that the DOT regulation was enacted pursuant to, among other Rhode Island statutes, § 42–35–3(b) and § 42–35–4(b)(2), which are the very statutes that create the emergency regulation procedure. Second, the cover letter, which reads "[t]he Department of Transportation finds that [there] is *imminent peril to the public health, safety and welfare * * *,*" actually tracks the language of § 42–35–3(b), which reads "[i]f an agency finds that an *imminent peril to the public health, safety, or welfare* requires adoption of a rule upon less than thirty (30) days' notice * * *.*" (Emphases added.) Third, the cover letter made the requisite finding of imminent peril: "The consuming public would be without a forum to redress infractions of [Chapters 31–5, 31–5.1]. The industry would be unregulated and the Department would be powerless to combat unfair business practices that occur daily in the sale, manufacture and distribution of new and used automobiles." The motion justice delineated all these aspects of the cover letter in his written decision.

We hold that the motion justice properly determined that the DOT regulation was an emergency regulation.

## B

### Expiration of an Emergency Regulation

Based upon his conclusion that the DOT regulation was an emergency regula-

---

**2.** Section 42–35–3(a)(1) formerly required that an agency give twenty days notice of its intended action. The thirty-day requirement became law in 1995 through P.L. 1995, ch. 300, § 1.

**3.** That case made the following specific factual findings:

"The commission issued two sets of rules relating to the turning off and on of gas, electric, and water services. The first set, filed with the Secretary of State's office on December 2, 1974, was characterized by the caption: 'Emergency Rules and Regulations.' The preface contained certain findings of fact relative to the necessity of such services, their increasing cost to the consumer and a reference to the forecasters' prediction of a severe winter for the 1974–75 season." *Providence Gas Co. v. Public Utilities Commission,* 116 R.I. 225, 227, 354 A.2d 413, 414 (1976).

tion, the motion justice then found that the DOT regulation had expired after 120 days of its filing with the Secretary of State and, therefore, the regulation no longer was valid at the time defendants allegedly charged the fees to the plaintiffs. On appeal, plaintiffs counter that if the DOT regulation was enacted as an emergency regulation, then § 42–35–3(c) prohibits defendants from challenging the enactment of the DOT regulation after two years "from its effective date."

Section 42–35–3(c) limits the time frame in which one may challenge the validity of a regulation on procedural grounds:

> "No rule hereafter adopted is valid unless adopted in substantial compliance with this section, but no contest of any rule on the ground of noncompliance with the procedural requirements of this section may be commenced after two (2) years from its effective date."

To reiterate, an emergency regulation "may be effective for a period of not longer than one hundred twenty (120) days." Section 42–35–3(b). Thus, the precise issue on appeal is whether the two-year window created by § 42–35–3(c) should be interpreted as allowing an emergency regulation, which expires as an operation of law after 120 days under § 42–35–3(b), to regain the force of law if it is not challenged within two years of the effective date.

According to our established rules of statutory construction, " '[w]hen the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning.' " *Gem Plumbing & Heating Co. v. Rossi*, 867 A.2d 796, 811 (R.I.2005). The plain meaning of the statute is the best indication of the General Assembly's intent. *State v. Grayhurst*, 852 A.2d 491, 516 (R.I.2004). Thus, the rules of statuto-

ry construction will be applied only if the statutory language is ambiguous. *Rossi*, 867 A.2d at 811. Furthermore, we will not construe the statute " 'to reach an absurd or unintended result.' " *Harvard Pilgrim Health Care of New England, Inc. v. Gelati*, 865 A.2d 1028, 1038 (R.I.2004). Finally, we review questions of statutory interpretation *de novo*. *Grayhurst*, 852 A.2d at 516.

First, § 42–35–3(c) is not applicable to this case based on a literal reading of that section. The defendants did not contest the validity of the DOT regulation "on the ground of noncompliance with the procedural requirements of this section." In fact, defendants argued that the DOT regulation was enacted in precise accordance with § 42–35–3(b) and that the duly enacted DOT regulation had expired by operation of law. A motion to dismiss based upon the expiration of a duly enacted emergency regulation cannot be characterized as a challenge "on the ground of noncompliance," and, thus, it is not within the purview of the two-year window in subsection (c).

Also, plaintiffs' interpretation of this statute would lead to " 'an absurd or unintended result.' " *Gelati*, 865 A.2d at 1038. The plaintiffs would have us interpret this statute as allowing an expired emergency regulation, which has not been challenged within the two-year window, to be resurrected with the status of having been formally enacted pursuant to subsection (a) of § 42–35–3. This revival would occur if the emergency regulation had not been found to have expired within the two-year deadline in subsection (c) of § 42–35–3. To adopt plaintiffs' interpretation would be to embrace the concept of accidental—or, at best, coincidental—enactment of regulations. This we cannot do.

 As a matter of statutory interpretation of this particular legislative scheme, we hold that a challenge to a regulation on the ground that it is an emergency regulation that expired pursuant to § 42–35–3(b) need not be made within the two-year window prescribed by § 42–35–3(c).

Finally, we pause to note our sensitivity to plaintiffs' contention that the DOT regulation has "been in continuous use since [its] adoption" in 1992. However, the mere fact that a litigant or other interested party failed to discern that the DOT regulation was an emergency regulation that had expired does not enable this Court to ignore the clear command of § 42–35–3(b). What should have been recognized in 1992 can be acknowledged today.

This result unfortunately harms the plaintiffs: the rug has been pulled out from underneath what likely would have been a viable cause of action because of the disgraceful ineptitude of certain state administrative agencies. This result easily could have been avoided if RIDOT or the Department of Administration[4] had followed up on the emergency regulation by enacting that same regulation as permanent in accordance with § 42–35–3(a). This failure has cost the plaintiffs, and other consumers like them. The public deserves better. Our rules of statutory construction and the plain language of § 42–35–3(b), however, prevent us from adequately alleviating the harm done to these consumers based on the facts of this case.

### Conclusion

For the foregoing reasons, we affirm the motion justice's grant of summary judgment in favor of the defendants. The record shall be remanded to the Superior Court.

---

4. General Laws 1956 (2002 Reenactment) § 31–5.1–3(c) bestowed upon the Department of Administration the power to make rules and regulations interpreting the prohibition on unfair methods of competition and unfair or deceptive acts or practices. That power formerly resided in the Rhode Island Department of Transportation.