DECISION
This matter comes before the Court on the appeal of Robert LaFlamme and Woodfield Farm, LLC ("Appellants") from a decision of the Warwick Zoning Board of Review (the "Zoning Board"), acting as the appeals board for the Warwick Planning Board (the "Planning Board").[1] The Zoning Board upheld the decision of the Planning Board, which denied Plaintiff's request for master plan approval to construct a residential condominium complex and a recommendation for a zoning change. Jurisdiction of this Court is pursuant to G.L. 1956 § 45-23-71.
 Facts and Travel
In early 2004, Appellants submitted an application to the Planning Board seeking master plan approval to develop the property located at 271 Toll Gate Road (the "Property") into 117 residential condominium units (the "Project"). The Project was classified as a major land development by the Warwick Planning Department (the "Planning Department"). Appellants further requested that the Planning Board issue a recommendation to the Warwick City Council that the Property's zoning designation be changed from "Office" to "Planned District Residential A7". The Property, which is presently utilized as a small farm and residence, is owned by Robert LaFlamme. Mr. LaFlamme has entered into a purchase and sales agreement to sell the Property to Woodfield Farms, LLC, upon the satisfaction of certain conditions. Appellants' application for master plan approval and a zoning change recommendation was heard before the Planning Board on April 7, 2004 and June 2, 2004.
In accordance with Rhode Island law, Appellants were required to undergo stages of review in order to acquire consent to proceed with the Project. Sec. § 45-23-39. The first required stage is a pre-application meeting with the staff of the Planning Department. At this time, the Planning Department staff advised Appellants that it was their opinion that the proposed density of the Project was too high. The Appellants nevertheless decided to proceed with the original application. The application called for 117 residential condominium units to be built on the Property, which is comprised of 10.2 acres.[2] The Property is subject to a power line easement, held by Narragansett Electric, which covers 3.08 acres (the "Easement"). The significance of the Easement is disputed by the parties. Following the pre-application meeting, the Planning Department submitted a report to the Planning Board, reflecting their concerns. The Planning Department recommended that the Project be approved, so long as the number of condominium units was reduced to 80.
The second required stage of review, master plan approval, was scheduled to be heard before the Planning Board on April 7, 2004. At the outset of the hearing, the Planning Board informed the Appellants that only five members of the nine-member board were present. As such, Appellant was informed that a unanimous vote of the members present would be required to achieve the necessary majority vote for master plan approval. The Planning Board offered Appellants the option of rescheduling the hearing, but the latter elected to proceed.
At the hearing, Appellants presented three witnesses whose qualifications as experts in their respective fields were either known to the Planning Board or established on the record. Appellants first called the Project's engineer, Brian Thallman. Mr. Thallman testified as to the nature of the Project and confirmed that it would comply with all state and municipal regulations, such as those relating to the sewer system and drainage. Mr. Thallman also offered his opinion that the Project would have less impact on peak traffic times, than an office building. Richard Bernardo, who testified as an expert in traffic engineering, was the next witness called by Appellants. Mr. Bernardo offered testimony as to the nature of the studies he had performed on the area, his personal observations of traffic patterns around the Property and his research of accident data from the Warwick Police Department. Mr. Bernardo then offered his professional opinion that the Project would result in two and one-half times less traffic flow than a conservatively-sized medical office building and that the Project's peak traffic usage times would differ from the other buildings on Toll Gate Road. Mr. Bernardo also testified that the Project would not have a negative effect on public health, welfare and safety.
The most extensive testimony offered in favor of the Project was provided by John A. Pagliarini. Mr. Pagliarini possesses extensive experience as a town planner, municipal tax assessor, property appraiser and attorney. Mr. Pagliarini's qualifications, as an expert in the area of land use and development, were unanimously accepted by the Planning Board. Mr. Pagliarini testified, in pertinent part, that the Project was consistent with Warwick's Comprehensive Plan (the "Comprehensive Plan") and that it met the density requirements of the town's zoning ordinances. Mr. Pagliarini further testified that the Planning Board's recommendation of approval, conditioned on a reduced number of units, was likely based on a misconception as to the effect of the Easement on the density calculation. Mr. Pagliarini stated that there is no provision in the Warwick Zoning Code or Warwick Development Review Regulations, which requires that a parcel's size be reduced by any and all utility easements prior to making a density calculation. Mr. Pagliarini testified that the entire area of the parcel, including the 3.08 acres subject to the Easement, should be considered in making the density calculation. Therefore, he testified that a density of 12 condominium units per acre was permissible, under Section 308 of Warwick's Zoning Code. The witness then represented that the Easement, which extends over other areas on Toll Gate Road, had not been considered a factor in the development of those neighboring properties.[3] Mr. Pagliarini also testified that the paving of an easement does not constitute the construction of a "structure," under Rhode Island law. Finally, the witness opined that including the area covered by the Easement in the density calculation would not negatively affect the public's health safety and welfare.
Upon the conclusion of the expert witnesses' testimony, the meeting was opened up for public comment, and various persons living in the area of the Property voiced their concerns to the Planning Board. The neighboring property owners expressed a variety of apprehensions, including those related to traffic, home values, and the proposed residential use of the Property. The neighbors did not offer the testimony of any expert witnesses. At the conclusion of the open portion of the hearing, the Appellants requested that the hearing be continued so that the various concerns of the neighbors could be considered and addressed. The Planning Board moved to continue the hearing, and the matter was tabled until approximately two months later. At some point during the two-month period, Appellants met with the neighbors and offered a presentation, in which they more fully explained the Project.
On June 2, 2004, the hearing on master plan approval resumed before the Planning Board. Again, the Planning Board was comprised of only five members, and Appellants were reminded that they would need a unanimous vote for master plan approval. There was no objection to this requirement. The hearing resumed with the Planning Board hearing from Appellants' attorney, Robert Flaherty, and the Director of the Planning Department, Mark Carruolo. The Planning Board also received additional statements from the public. At the close of the hearing, the Planning Board was presented with the Planning Department's recommendations by Mr. Carruolo. The Planning Department recommended that master plan approval for the Project be granted so long as the Warwick City Council approved the zoning change and with the stipulation that the proposed number of condominium units be reduced from 117 units to approximately 80 units. Mr. Carruolo stated that the Planning Department was recommending a reduced number of units because of the utility easement held by Narragansett Electric. After hearing the recommendation of the Planning Department, a member of the Planning Board made a motion to formally deny Appellants' request for master plan approval. The motion was seconded by another board member. Although the other three board members voted to approve Appellants' master plan, approval was denied because of the unanimous vote requirement. One board member offered the reason for denial on the record. He stated: "My reason for denial relates to the density calculation, and I don't believe a residential use is appropriate. I believe it's more appropriately used as commercial."
On June 10, 2004, the Planning Board issued a written decision on the matter. The decision listed various findings of fact made by the Planning Board, as well as their grounds for denying Appellants' application for master plan approval. The first two grounds for denial are the most relevant to the proceeding before this Court. First, the Planning Board found that the Project was
 "[n]ot consistent with the Comprehensive Community Plan. That section of Tollgate Road is predominantly zoned for office use, that the subject property is zoned office and that the property should be developed for office use, preferably medical offices."
Secondly, the Planning Board held that the Project was
 "[n]ot in compliance with the standards and provisions of the City's Zoning Ordinance. That the property would require a zone change to PDR A-7 and that the proposed density exceeds the maximum allowed density as a result of a 3.08 acre utility easement which prohibits the construction of structures."
The decision was subsequently recorded in the City of Warwick Land Evidence Record. The Appellants filed a timely appeal of this decision to the Zoning Board, sitting as the appeals board of the Planning Board.
The appeal was heard before the Zoning Board on August 10, 2004. In accordance with Rhode Island law, the Zoning Board's review of the underlying decision was limited to the findings and scope of the Planning Board's record. Sec. 45-23-70. Mr. Carruolo was in attendance to explain the decision of the Planning Board and Appellants were represented by their attorney. Counsel's main argument, in support of the appeal, was that the Planning Board's decision was contrary to and unsupported by the evidence offered at the two hearings. Appellant's attorney asserted that the Planning Board had failed to give adequate weight to the testimony of Appellants' expert witnesses. He further claimed that members of the Planning Board unlawfully took into account the lay opinions of the neighbors on matters that were solely proper for expert testimony. Mr. Carruolo countered that the Planning Board had considered the expert testimony, along with the recommendation of the Planning Department, and based on such had rendered a reasonable decision.
Upon the conclusion of the arguments, a member of the Zoning Board made a motion to deny the appeal and affirm the decision of the Planning Board. The motion was seconded and carried unanimously. The decision of the Zoning Board was issued on September 15, 2004 and thereafter filed in the Warwick Land Evidence Record. The matter was timely appealed to this Court. Following the denial of their appeal before the Zoning Board, Appellants submitted revised proposals for the Property to the Planning Board. The first revised proposal sought approval to develop the Property as a mixed-use development consisting of residential units and office space. Approval for this project was denied by the Planning Board and was not appealed. Appellants, thereafter, sought approval to construct a residential condominium complex, which would be comprised of 85 units. Master plan approval was granted for this project; however, the City Council denied the application for a zoning change. Presently, the only application before this Court is the original application to develop a 117 unit residential condominium complex.
 Standard of Review
This Court's review of the decision of a zoning board, sitting as the board of appeals for a planning board, is pursuant to § 45-23-71. Section 45-23-71 states:
 "The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 45-23-71(c).
Therefore, judicial review of board decisions is not de novo. Rather, § 45-23-71 requires that the Superior Court review the board of appeals' decisions utilizing the "`traditional judicial' review standard that is applied in administrative-agency actions." Munroe v. Town of E.Greenwich, 733 A.2d 703, 705 (R.I. 1999) (quoting Kirby v. PlanningBoard of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)). As a result, "the Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact."Id. This Court is "limited to a search of the record to determine if there is any competent evidence upon which the agency's decision rests."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998).
Appellants assert that the Planning Board's decision was not supported by the weight of the evidence on the record, and thus, the Zoning Board's denial of appeal was in error. The Zoning Board argues that the Planning Board's decision was supported by the evidence and was neither arbitrary nor capricious. The Zoning Board further contends that the subsequent two applications filed by the Appellants to develop the Property have resulted in the withdrawal of the original application.
 Withdrawal of the First Application
In a supplemental memorandum of law, filed with this Court, the Zoning Board alleged that this appeal should be denied and dismissed as a result of subsequent applications filed by Appellants respecting the Property. As stated above, following the denial of the subject application, Appellants filed two additional applications for master plan approval and zoning relief on the Property. Both applications, which proposed different development projects from the original, were denied at various stages of review. The Zoning Board contends that the later applications resulted in the withdrawal of the original application, thereby rendering a review by this Court unnecessary. This Court will now address this threshold issue.
In support of its argument, the Zoning Board relies exclusively on a Rhode Island Supreme Court and a Superior Court decision. The Zoning Board cites to Carlson v. Town of Smithfield for the proposition that an applicant, who seeks legal redress on one development application while other applications are still pending, is impermissibly failing to exhaust their administrative remedies. See Carlson v. Town ofSmithfield, 723 A.2d 1129 (R.I. 1999). In Carlson, the plaintiffs had filed three applications with the Zoning Board of Smithfield. The first application, which sought to build a residential cluster on three units of land, was denied by the zoning board and properly appealed to the Superior Court. Thereafter, plaintiffs filed a second application seeking to construct a smaller development on one of the parcels and then a third application seeking to also construct a smaller development on the remaining two parcels. The second application was tabled by the planning board and the third application was preliminarily approved by the planning board. Neither application was denied or even heard by the zoning board. Despite this fact, the plaintiffs appealed their second and third applications to the Superior Court. As a result, the Supreme Court held that the plaintiffs had failed to exhaust their administrative remedies prior to filing suit on the second andthird applications. The Zoning Board's reliance on Carlson is misplaced. The Supreme Court did not hold that it is improper for a party to appeal an application, on which all administrative remedies have been exhausted, solely because separate and distinct applications have been filed. With respect to the application before this Court, the Appellants properly exhausted all administrative remedies.
The Zoning Board also relies on the Superior Court decision,Cardillo v. Pilocci, for the proposition that a second application for zoning relief on the same property is a withdrawal of a first application requesting different zoning relief. See Cardillo v.Pilocci, 2003 R.I. Super. LEXIS 123 (2003). Cardillo is factually distinguishable from the matter at hand. In Cardillo, the applicant received a favorable zoning board decision, which granted them a dimensional variance and a special use permit. An adverse party chose to appeal the zoning board's decision. Thereafter, the applicant, in what was described by the Court as an attempt to "hedge his bets," filed a second application whereby he altered his proposal so that no dimensional variance was needed. Id. at *6. The Court found that for the sake of judicial efficiency, the applicant should not be afforded the opportunity to have the appeal heard when he had already received alternate zoning relief for the same property. In the instant matter, Appellants have received no favorable decisions from the Zoning Board and have not been awarded any zoning relief on the Property. As such, this Court will entertain this appeal.
This Court is further persuaded, by our Supreme Court's holding inJohnston Ambulatory Surgical Assocs. v. Nolan, that Appellants' first application has not been withdrawn. See Johnston Ambulatory SurgicalAssocs. v. Nolan, 755 A.2d 799 (R.I. 2000). In Johnston Ambulatory, our Supreme Court addressed the doctrine of administrative finality, which has become a well-settled rule in Rhode Island. Under the doctrine, "when an administrative agency receives an application for relief and denies it, a subsequent application for the same relief may not be granted absent a showing of a change in material circumstances during the time between the two applications." Id. at 808. The doctrine only applies if "the outcome sought in each application is substantially similar." Id; see also May-Day Realty Corp. v. Board of Appeals ofPawtucket, 107 R.I. 235, 237, 267 A.2d 400, 401-02 (1970). As stated above, Appellants sought to construct a mixed-use development in their second application and a residential development comprised of 85 units in their third application. As the relief requested is different in both applications, the doctrine of administrative finality does not serve to prevent Appellants from filing those second two applications. The Zoning Board does not find otherwise. The Zoning Board does however, as detailed above, argue that the second two applications should serve to void the first application. In Johnston Ambulatory, our Supreme Court explained that it is proper for a party to file a second application when the first application is pending appeal before the Superior Court, so long as the doctrine of administrative finality does not serve to bar such application.[4] In so holding, our Supreme Court further explained that "[i]f the appeal of the first application is successful, and the relief sought is granted by order of a court, the second application is moot and administrative finality no longer is an issue."Johnston Ambulatory Surgical Assocs. v. Nolan, 755 A.2d at 813. Therefore, if this Court grants relief on the application in issue, the Appellants' later applications would be rendered moot. The converse would not be true.
This Court also finds it important to note that no language in the statutes or ordinances, which govern the approval process for major land developments, either explicitly or implicitly states that subsequent applications for different relief invalidate an original application that is being appealed. See § 45-23-36, § 45-23-39, § 45-23-40; seealso Warwick Land Development and Subdivision Review Regulations art. 5. As such, this appeal is properly before this Court.
 Density Calculation
Appellants claim that the Planning Board's decision was in error, due in part to the density calculation utilized by the Planning Department in making its recommendation. Residential density is defined in Warwick's zoning ordinances as "[t]he number of dwelling unit per unit of land." See Warwick Zoning Ordinances § 200.47. Appellants assert that there was no legal justification for the Planning Board to reduce the Property's area by the area of the Easement, prior to making its density calculation. Therefore, Appellants allege that the Zoning Board's decision to uphold the Planning Board's holding on the issue of density was clearly erroneous.
The record of the hearings before the Planning Board and the Zoning Board are replete with discussion relating to the issue of density. Mr. Carruolo presented to the Planning Board the Planning Department's recommendation that the number of proposed units be reduced in number prior to calculating density. On the record, an unidentified speaker, who may have been Mr. Carruolo, states: "The density for a condo development is based on area, buildable area, so if the area can't be built on, the Planning Department is surmising that the density should be reduced by an equivalent amount of that quote, unquote unbuildable area." These statements led to an extensive discussion by the parties as to whether a parking lot, which Appellants were negotiating with Narragansett Electric to build over the Easement, constituted a "structure."[5] However, issues relating to the construction of a parking lot were tangential to the actual issue. The proper inquiry is whether there is any language in the general laws of Rhode Island or the ordinances of Warwick, which requires that a parcel be reduced in size by any utility easements, prior to making the density calculation.
Appellants' application was made pursuant section 308 of Warwick's zoning ordinances, which addresses planned district residential overlay districts. See Warwick Zoning Ordinances § 308. The specific district is PDR-A7, which requires a minimum lot area of 40,000 square feet and allows a residential density of 12 units per acre. Id. at § 308.3. This section of the zoning ordinances does not contain any language detailing what area of the property, if any, should be excluded prior to the calculation of density. However, the definition section of the Warwick's Zoning Ordinances does address such issue. Specifically, the Zoning Ordinances define the term "Lot Area" as "[t]he total area within the boundaries of a lot, excluding any street right-of-way, usually reported in acres or square feet. However, for any planned district residential (PDR) overlay district, subsection 308. . . . calculation of such lot area shall exclude any part under water or containing coastal or freshwater wetlands as defined by subsections 200.36 and 200.146."Id. at § 200.92. The ordinance very clearly provides for the reduction of all lot areas by any street right-of-ways and specifically for the reduction of lots in PDR overlay districts by areas under water or areas containing wetlands. The ordinance does not contain any language requiring that lot areas be reduced by utility easements.
This Court is bound to read this ordinance in accord with Rhode Island's well established rules of statutory construction, which hold that "`when the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning.'" Park v. Rizzo Ford, Inc., 893 A.2d 216,221 (R.I. 2006) (quoting Gem Plumbing Heating Co. v. Rossi,867 A.2d 796, 811 (R.I. 2005)). "It is well settled that the rules governing statutory interpretation are equally applicable to the interpretation of an ordinance." Jones v. Rommell, 521 A.2d 543, 544-545 (R.I. 1987);see also Mongony v. Bevilacqua, 432 A.2d 661 (R.I. 1981). This Court is persuaded by the fact that the ordinance expressly provides for the reduction of a lot's area by any street right-of-ways, areas under water and wetlands, but does not speak to utility easements. The drafters demonstrated the ability to limit the area of a lot and affirmatively chose not to limit that area by utility easements. Our Supreme Court has consistently "held that `an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed.'"Greenhalgh v. Cranston, 603 A.2d 1090, 1092 (R.I. 1992) (quotingMurphy v. Murphy, 471 A.2d 619, 622 (R.I. 1984)); see also Rubano v.DiCenzo, 759 A.2d 959, 969 (R.I. 2000) (finding significance in an instance where "the Legislature demonstrated that it knew how to adopt appropriate limiting language . . . [but] chose not to include such limiting language.") Consequently, in light of the plain and unambiguous language of the ordinance, it was not appropriate for the Planning Board to find that the Property should be reduced by the area of the Easement, prior to making the density calculation.
This finding is consistent with a recent Supreme Court case, regarding the issue of density calculations. In that decision, our Supreme Court addressed a Barrington zoning ordinance, which the State Housing Appeals Board ("SHAB") had determined to be vague in nature. See E. Bay Cmty.Dev. Corp. v. Zoning Bd. of Review, 901 A.2d 1136 (R.I. 2006). In allowing SHAB to exercise discretion in calculating the property's density, our Supreme Court found that "the manner in which `site area' is determined is largely discretionary because the regulations do not explicitly delineate what areas must be excluded from total parcel acreage." Id. at 1160-1161. As stated above, in the instant matter, the Warwick Zoning Ordinance does clearly delineate what areas should be excluded from the calculation of a lot's area. Therefore, the Planning Board abused its discretion to find otherwise.
Furthermore, in Town of Coventry Zoning Bd. of Review v. Omni Dev.Corp., the Rhode Island Supreme Court followed the same standards of statutory construction when they required SHAB to comply with the explicit language of a Coventry regulation, which defined "land unsuitable for development as wetlands, land located in a flood zone, streets and sidewalks, public and private easements, land containing steep slopes and cemeteries." Town of Coventry Zoning Bd. of Review v.Omni Dev. Corp., 814 A.2d 889, 905 (R.I. 2003). Accordingly, our Supreme Court held that the applicants had to deduct such areas from their properties before calculating density. In accordance with this decision, Appellants would be required to deduct any street right-of-ways, areas under water or areas containing wetlands from their total lot area prior to calculating the density of the Property. They would not however be required to deduct utility easements from the area of the Property. Based on the above, this Court finds that the Planning Board's excluding the 3.08 acres from the Property's area before calculating the allowable density was clearly erroneous. This Court believes that allowing the Planning Board to indiscriminately decide what areas of a parcel will be omitted for the purpose of density calculation, would subject the approval process to abuse and random case by case enforcement. As such, the Zoning Board acted in violation of ordinance provisions and abused its discretion in affirming the Planning Board's decision regarding the Project's density.
 Planning Board's Decision
Appellants also contend that the Zoning Board erroneously upheld the Planning Board's decision because the latter had failed to give adequate weight to the expert testimony offered by Appellants. Appellants further maintain that the Planning Board afforded impermissible weight to lay testimony. In addition, Appellants claim that the Planning Board's decision should not have been affirmed because its findings of fact were not supported by the record. This Court agrees.
In rendering a decision, an administrative body is required to participate in "the making of findings of fact and the application of legal principles in such a manner that a judicial body might review a decision with a reasonable understanding of the manner in which evidentiary conflicts have been resolved." Thorpe v. Zoning Board ofReview of North Kingstown, 492 A.2d 1236, 1237 (R.I. 1985). "In determining whether the municipal body has complied with these basic requirements, this Court is concerned with the content, rather than the form, of the decision." Cullen v. Town Council, 850 A.2d 900, 904 (R.I. 2004); see also May-Day Realty Corp. v. Board of Appeals ofPawtucket, 107 R.I. at 239, 267 A.2d at 403. In the case at hand, the Planning Board did indeed produce a proper written decision containing the requisite findings of fact and conclusions therein. However, it does not appear that those statements are substantiated by evidence on the record. Rather, it is evident from the record or more specifically the vacancies therein, that the Planning Board impermissibly substituted its judgment on certain expert issues in reaching their conclusions. Moreover, the Planning Board did not satisfactorily place on the record its reasons for reaching those adverse conclusions.
At the Planning Board hearing, Appellants introduced the testimony of the three expert witnesses, identified above. The remaining testimony came from Mr. Carruolo, who spoke on behalf of the Planning Department and the neighboring property owners. Appellants' main expert witness, Mr. Pagliarini, testified that the Project was consistent with the Comprehensive Plan of the City of Warwick. Mr. Pagliarini offered, on the record, a variety of reasons why it was his opinion that the Project was consistent with the Comprehensive Plan. Thereafter, Mr. Carruolo, in offering the Planning Department's recommendation, testified that the Project was generally consistent with the Comprehensive Plan. However, in its written decision, the Planning Board concluded that the Project was: "Not consistent with the Comprehensive Community Plan. . . . that the subject property is zoned office and that the property should be developed for office use, preferably medical offices." In light of the expert testimony and the Planning Department's recommendation, it is uncertain upon what substantive facts this conclusion was based. In articulating a reason for the Planning Board's denial, an unidentified board member stated: "I don't believe a residential use is appropriate. I believe it's more appropriately used as commercial." Not only is this statement not consistent with the Planning Board's eventual holding, but it is further unaccompanied by factual justifications. It is clear that "[t]he board should have disclosed on the record the observations or information upon which it acted." Toohey v. Kilday, 415 A.2d 732, 738
(R.I. 1980). Further, if in determining that the Project was inconsistent with the Comprehensive Plan, the Planning Board "relied upon its own knowledge of the area in question, the record fails to reveal the particular evidence upon which the board relied." SalveRegina College v. Zoning Bd. of Review, 594 A.2d 878, 882 (R.I. 1991).
It is further noteworthy that the only testimony offered to support the proposition that residential use was not appropriate was offered by the neighboring property owners. However, it is well-settled in our jurisdiction that the lay judgments of neighboring property owners do not have probative force with respect to issues that are only appropriately testified to by experts. See Salve Regina College v.Zoning Bd. of Review, 594 A.2d at 882; see also Toohey v. Kilday,415 A.2d 732 (1980). Therefore, the Planning Board did not have adequate evidence on the record to support their holding with respect to this issue. As a result, this Court finds that the Zoning Board erred in finding that there was sufficient evidence on the record to support the Planning Board's conclusion that the Project was inconsistent with the Comprehensive Plan.
 Conclusion
Upon review of the entire record, this Court finds that the Zoning Board's decision to deny the appeal and uphold the decision of the Planning Board constituted an abuse of discretion and was in violation of ordinance provisions. The Zoning Board's holding was clearly erroneous in light of the reliable, probative and substantial evidence before the Planning Board. Specifically, the Zoning Board relied on the density calculation utilized by the Planning Board, in direct contravention of the language of the zoning ordinances of the City of Warwick. In addition, the Zoning Board's denial of appeal was clearly erroneous as the Planning Board had failed to give adequate weight to the expert testimony offered by Appellants and failed to place on the record their reasons for rejecting such testimony.
Therefore, this Court remands this matter to the Zoning Board so that it may remand the matter to the Planning Board. The Zoning Board, in its remand, is instructed to direct the Planning Board to consider the area covered by the Easement in formulating the density calculation and thus its recommendation. Furthermore, the Zoning Board shall direct the Planning Board to revisit the expert testimony offered by Appellants. The Planning Board shall afford such testimony the proper weight and affirmatively address on the record any areas of disagreement and the factual basis on which they rest. Counsel shall submit an appropriate order for entry in accordance with this opinion.
[1] Pursuant to G.L. 1956 § 45-23-57, Warwick's Zoning Board hears appeals from the decisions of Warwick's Planning Board.
[2] The record speaks in terms of the Property being comprised of 9.8 acres; however, it was subsequently determined that the parcel is actually 4/10th of an acre larger. The original estimate was the result of an error on the part of the surveyor with respect to the Property's boundary lines.
[3] Specifically, Mr. Pagliarini spoke of the property located at 250 Toll Gate Road, which had a portion of its building encroaching on the Easement. The Planning Department later offered the explanation that this permit had been granted in error by the building official. Mr. Pagliarini further spoke of three single family lots on an area known as Emily Lane, which are affected by the Easement and would be considered undersized if the Easement was applied to reduce their lot areas. The Planning Department took the position that the lots on Emily Lane are single family lots, which do not require density calculations, and therefore Mr. Pagliarini's argument was without merit.
[4] The Rhode Island Supreme Court stated "the burden is on the applicant to demonstrate a change in material circumstances at the time of the second application, regardless of whether the first application is being appealed." Id. at 813.
[5] Subsequent testimony offered before the Zoning Board revealed that the Planning Board does not dispute that Appellants would be able to construct a parking lot over the Easement if they received permission from Narragansett Electric to do so.